May it please the Court, my name is Natasha Naragi. I am counsel for appellants in this matter. With the Court's assistance, I would like to reserve two minutes for rebuttal. In 2005, Congress enacted, and President George W. Bush signed into law, the Energy Policy Act, which provided for the development of mandatory reliability standards to prevent the exact type of blackout that occurred in this case. I understand that act to have been a congressional enactment to establish standards for electricity companies in interstate commerce at the wholesale level to maintain the consistency of delivery of electricity against any one severe act. How does that act benefit your plaintiffs? So it is correct that the act specifically called for the development of mandatory reliability standards of the bulk power system. And you also agree with me that the act did not provide a private cause of action, as does section 1983, for instance, for constitutional violations, as does 45 U.S.C. 51, the Federal Employers' Liability Act. They provide for private causes of action. This action did not. Yes, Your Honor, we agree. And what you're trying to do is to say that under Arizona common law, as interpreted by Arizona's cases, if you want to apply Arizona law, there is a implied cause of action by the enactment of a federal statute which does not give a private cause of action. But Arizona should imply a private cause of action out of the federal statute. Is that right? Well, yes, it is correct. So Arizona law provides a negligence per se cause of action whereby a party that violates a statute that was intended to prevent a certain type of harm. There are two requirements for the Arizona per se negligence. Number one, that the act protect some designated class of persons from a particular type of risk. What Arizona authority would you submit to me to show that Arizona intended the federal act to benefit Arizona electricity consumers against the risk of electricity blackouts? There is no Arizona or California authority addressing the effect of the mandatory reliability standards in section 824-0. What we're trying to do is under Arizona law, it provides a negligence per se cause of action and for statutes that were intended to prevent the type of harm that occurred and protect the class of persons, including plaintiff. In this case, it's our position that the mandatory reliability standards in section 824-0 were enacted in the wake of the Northeast blackout of 2003. And if you look at the legislative history, it's clear that they were enacted to prevent subsequent blackouts. Even though they govern the bulk power system, they were trying to address cascading outages. And from 1965 to 1999, there had been at least seven of these major outages. So this section of the Energy Policy Act was trying to prevent future blackouts. So even though it governs the bulk power system, it was intended for the public, it was effective for the public good. Why do you say under Arizona law that an enactment between the government and to apply to governments to electricity suppliers is intended to benefit users of electricity? I have in mind the case of Sullivan v. Pulte Homes. Are you familiar with that case? No, I'm not, Your Honor. Oh, well, let me tell you about the case. In Sullivan v. Pulte Homes, Sullivan was a subsequent buyer of a house, had a retaining wall. The retaining wall, Sullivan said, was not constructed in compliance with municipal building standards. He then sued Pulte, who'd with Pulte. There was no implied warranty. It was a tort claim, and he claimed to be owed a duty by Pulte based on a statute of municipal ordinance, which said you have to build a retaining wall in a certain way, right? The Arizona Court of Appeals said that statute does not constitute a basis for negligence per se. There's no duty owed to Sullivan because that statute was for the protection of the public, not the protection of any particular individual or class of persons, and it did not intend to protect against the risk of Mr. Sullivan having to rebuild the wall. That being the case, is that not an analogy that we can apply to this case, that Congress enacted the regulatory statutes, but not for the benefit of electricity users against blackouts? Well, if you look at the congressional testimony, I mean, there are excerpts that state specifically that this was enacted to protect and help people that had been stuck in elevators that were without power after the Northeast blackout of 2003. So while the Section 824.0 doesn't specifically state this act is intended to prevent end-user electricity consumers, that is the ultimate purpose of the act. Well, if it was to protect people who were caught in elevators by blackouts, right? And that's a congressional testimony, that's a legislative history, right? Why didn't Congress enact a cause of action, a private cause of action? I can't speculate as to that, but... Maybe the congressional testimony didn't carry the day with the enactment of the legislation. Well, I mean, the act does provide for enforcement by FERC and NERC. However, there have been continued violations. FERC has noted that APS has previously violated the mandatory reliability standards. Wasn't there a $3.5 million settlement between APS and NERC as a result of this blackout? Correct, but there have been other violations of the mandatory reliability standards. So it's our position that without liability, there is not sufficient deterrence effect to prevent future violations of the mandatory reliability standards. And I would just like to state also, with respect to California law, we believe that although there is no private cause of action under Section 824.0, if we look at the policy the roll-in factors that are used to assess duty under California law would also support the existence of a duty here. One of those is... Well, the white case was pretty specific to the contrary, wasn't it? I'm sorry, which case? The white decision. Well, that case is distinguishable from this case. In that case, it involved a motorist who was injured in a car accident at night that was partly caused by an inoperable street light, which the utility had failed to maintain. But in that case, the foreseeability of the injury was extremely low, because the inoperable street light was only one factor in causing the accident. The Court also noted that the burden on... An inoperable street light, if the location is dark, it's not hard to foresee that has consequences. I'm not sure that that inference is any more remote than the inference you've tried to offer from the legislative history for the Federal statute. Well, vehicles driving at night, though, are generally supposed to use headlights. And so I think that there were additional other precautions that could be taken. I didn't read white as a foreseeability case or a causation case. I didn't see the Court saying that, well, the liability doesn't fall on the utility because it wasn't really responsible. I mean, the language is pretty explicit. Without a contract between the utility and the customer specific to be providing for the service, the public utility owes no duty. Not a question of whether there was a breach of duty. This owes no duty, period. Right. But in that case, I mean, if you look at the role and factors, they still supported or they did not support the existence of a duty. What I'm saying is that in this case, the role and factors do support the existence of a duty. The Court found in that case that the burden of requiring the utility to monitor every single streetlight when streetlights commonly go out would be immense. And in comparison, the risk to society of not imposing a burden would be comparatively low. In this case, the same is not true. The cost to society of these blackouts is immense. 2.7 million people were affected and many were left without power for as many as 12 hours. And the foreseeability here is extremely high. Pat Wood, Chairman of FERC, testified after the 2003 blackout that there are common causes underlying these blackouts. And those common causes are what the mandatory reliability standards sought to address. So it's our position that California, that under California law, the role and factors would support a duty in this case because the circumstances are somewhat different than in white. And then second, I would just point out that if the Court finds that there is no duty, plaintiffs' claims should have been governed by Arizona law pursuant to a choice of law analysis. Why was this case filed in California? Because that is where the plaintiffs are located. And so California doesn't have an interest? I mean, your office elected to file the case in California. Your clients are from California. So why isn't California law appropriate? Well, California law doesn't have an interest in this case because California law does not fix tort liability. And so in this sense, it protects defendants from liability by requiring that plaintiff prove each and every element of a cause of action for negligence, even where there is a clear violation of a statute that was intended to prevent the type of harm that occurred. So the courts have held that a state's interest in protecting from potentially excessive financial burdens is primarily local. So California doesn't have an interest in protecting the out-of-state utilities in this case from potentially excessive financial burdens. I still have to say, I mean, your clients are in California. It seems to me California has an interest in protecting its citizens. You elected to file the case in California. It could have been filed in Arizona. I mean, the defendant's there, so there's no question that your California clients could have filed the case in Arizona and chose not to. So I'm not sure why we should decide that, oh, your law, your state's law shouldn't apply. Well, the issue is, I mean, is a choice of law analysis under the governmental interest approach. California does not, you correctly pointed out that California, that this case involves California plaintiffs. So California law limits liability for the defendants. So California has no interest in applying its own law to deny recovery for its plaintiffs. It's like a choice of law rule that says the law where plaintiffs win is the law that should be applied. We shouldn't care about defendants. Well, we are also... California not care as much about its own citizens who are plaintiffs. Well, this case is, we're not saying that California law shouldn't care as much, but in Hurtado, courts have recognized that a state doesn't have an interest in applying its law to deny its citizens recovery. I would just reserve the remainder of my time. You may do so. Good morning, your honors. May it please the court, my name is Bill Maladon and I represent the defendants' appellees in this matter, Pinnacle West Capital Corporation and its subsidiary, Arizona Public Service Company. Your honors, I want to point, I want to start out by pointing out something. This is the second case that was filed with respect to the 2011 power outage that occurred. The first case was the Bulacachi case that is referenced in our papers. A case that was also assigned and decided by, assigned to and decided by Judge Huff in the Southern District of California. In that case, there were three claims that were brought. A common law negligence claim under California law, a nuisance claim under California law, and a Consumer Protection Act claim under California law.  including some of the grounds that we're talking about here today. The Bulacachi case was not appealed to this court. This case was then filed asserting only one cause of action to get around the decisions that Judge Huff had made in the Bulacachi case, they asserted a claim for negligence per se. That's the only claim in this case, and as you know, Judge Huff dismissed that claim as well in a, I submit a very well-reasoned decision as to why negligence per se did not apply in this instance. Now, there are two fundamental problems with the theory the plaintiff's counsel has espoused here. The first one, and your honors have touched upon these already, so I'll be brief. The first one is that Arizona law somehow applies to these claims. They want that because they think there's an easier path to a negligence per se claim under Arizona law. We don't think there is, but they think there is. That's wrong. Arizona law doesn't apply. The second fundamental error upon which their claims are premised is that they are within the class of person sought to be protected by the bulk power reliability standards that were enacted. They are not. They clearly are not. And I would respectfully submit to your honors that you need look no further than the amicus brief that was filed in connection with this proceeding in which the amici point out very clearly that those bulk power standards were not in any way, directly any way, intended to benefit end consumers. Well, in the end, at some level they were because nobody really cares about the electric companies trading power with each other. In the end, it gets sold to the consumers. Well, that's true, your honor, and the amici point that out in this regard. They say that one of the byproducts or one of the intended purposes, if you will, of the reliability standards was to lessen the probability of power outages that might occur, but it certainly wasn't intended to eliminate them because if you look at the reliability standards, one of the measures that's contained in the reliability standards is what's called load shedding, which is basically power outages designed specifically to prevent larger power outages and disruption of expensive equipment that the bulk transmission system relies upon to operate. So the very notion that you have reliability standards that call for, in certain instances, design blackouts  on the part of end user utilities is, I respectfully submit, simply not workable. So we don't think there's any basis for the assumption that plaintiffs are trying to make here that the reliability standards entitle them to the kind of relief that they're asking or that they're within the class of persons that are sought to be protected by those standards. And I would simply remind the court, as we point out in our brief, that there are three levels, broad levels, to our electric distribution system in this country. There's generation, which is number one, and you have some participants who are only generators, they don't do anything else. And then you have the transmission level, the bulk transmission level, which is usually operated by utilities, but it doesn't have to be. And then thirdly, you have retail distribution, which is generally regulated by the states in which the utilities are located. But that bulk transmission of electric utility is regulated by FERC, and it's regulated by, among other things, these reliability standards. And certainly, they're not intended to provide this kind of private cause of action that the plaintiffs are seeking. But even if they were, Your Honor, let me turn to why it doesn't work in this instance. Clearly, as Judge Huff indicated in her opinion in this case, California law does not permit a cause of action for negligence per se, even assuming that the reliability standards would otherwise apply for that purpose. Because California law, as she said, and if I could just briefly quote in her opinion at page five, she said, under California law, negligence per se is not a separate cause of action, but is the application of an evidentiary presumption provided by California Evidence Code 669. And she goes on to say, thus, plaintiffs have not stated a claim for negligence per se unless they have established that defendants owed them a duty of care, meaning an independent duty of care under California law. And as you pointed out, Judge Clifton, there is no independent duty of care under California law under the White case and other cases that have been decided by the California Supreme Court. And by the way, that law is not unique to California, as you know from our briefs. That's the law virtually every place in the country, including Arizona. A non-customer cannot sue a utility for harm allegedly caused by the utility. Mr. Malinow, would you kindly give me a citation to an Arizona case that holds similarly to White, that a consumer could not sue negligence per se in Arizona for a blackout? I didn't say that there's an Arizona case that says that a consumer could not sue negligence per se. I said that there's an Arizona case law for the proposition, Your Honor, that a consumer does not have a cause of action if that consumer is a non-customer of the utility. In other words, there's no duty. And that's the Cole case that we cite in our briefs. What's the citation of that? It is, Your Honor, the citation to it is 86 Pacific Second 946. That's Cole versus Arizona Edison Company. And there are other cases, Your Honor, that we also cite in our brief, but that is the Seminole case, if you will, in Arizona. And that one holds that there's no duty owed, no tort duty owed to a consumer for a blackout? The case stands for the proposition, Your Honor, that there is no duty. Here's the decision that the and this had to do with delivery of water, Your Honor. The court held that a the failure to deliver sufficient water pressure in in fire hydrants was not sufficient to give a consumer a cause of action because the consumer did not have a direct contractual relationship with the water company, only the city did. So in that regard, it's very similar to the holding of the California Supreme Court in the White case, an analogous situation. Cole had no right to a flow of water, and therefore, you say that this consumer had no right to a flow of electricity? That's correct. From a utility that was not a provider to that customer. And I would remind Your Honor that, and again, we pointed this out in our briefs, in the Bulacachi case, the plaintiffs in that case sued not only Arizona Public Service, but also San Diego Gas and Electric, which was one of the other companies that was supposedly responsible for the power outage, and as you know, was also held responsible by FERC, along with three or four other utilities that were involved. But in that case, Judge Huff dismissed the claims against San Diego Gas and Electric by the Bulacachi plaintiffs on filed rate preemption theories. So it's not as if a customer doesn't have a claim. It's just that the customer has a claim only against his or her utility, and only to the extent permissible by the law of the jurisdiction where the customer is located. So if the California Public Utility Authority wants to sanction San Diego Gas and Electric for some reason, they apparently have the authority to do that, but the California law does not permit a stand-alone separate cause of action against the utility, and certainly doesn't permit one by a non-customer. So the other thing in this regard, I just want to touch briefly upon counsel's negligence per se argument under Arizona law. Arizona law is very clear about one thing, and this ends the negligence per se inquiry, even assuming that this court could somehow disagree with Judge Huff and conclude that Arizona law applies. And we don't think the court could under these circumstances. Obviously a federal court sitting in California has to apply California law choice of law principles, conflict of law principles. And in doing so, it is clear that California's interests surmount in this case, and therefore California law would have to apply as Judge Huff held. But even if you concluded otherwise and said, wait a minute, we think Arizona law would apply, there's still no cause of action for negligence per se, because Arizona law is clear. And there are a number of cases that we've cited in our brief. The Huerta case and the Griffith case are the two principal ones. Those cases stand squarely for the proposition that in order for a statute or regulation to give rise to a negligence per se claim, the prohibition in the statute has to be specific. It cannot be general. So, for example, in the Huerta case, there's a statute that says that no motor vehicle shall be driven on the highway in an unsafe condition. And a motor vehicle was driven without passenger seat belts. And the passenger was injured and sued the owner of the car. The court said that is not sufficient to give rise to a claim of negligence per se. A statute that says you shall not drive a car on the road in an unsafe condition doesn't specifically prohibit use of a car without seat belts. And we're only going to allow a statute to give rise to a negligence per se claim if the statute is specific. And what the court said is, and I quote, this is from the Huerta case at page 10, such a general standard does not support a finding of negligence per se, end quote. Could you spell Huerta for me? Yes, Your Honor. I'm sorry. It is, and I will give you the site also. It is H-U-R-T-O. If I pronounce it, I apologize. But it's Huerta versus Francisco. And the site to it, Your Honor, is the P3rd site is 107 P3rd 934. And I was reading from page 937. But how can you be more specific than saying Mr. Maladon, the lights shall stay on? But it doesn't say that. The reliability standards don't say that, Your Honor. And I respectfully submit they don't even come close to saying that. What they say is that the participants in the bulk transmission system shall do a number of things that are designed to make that system as reliable as possible. And they, as I said before, one of the mechanisms that is specifically delineated under the reliability standards is the ability to engage in what is called load shedding. That's what it's called. In other words, shutting off the power in certain areas when it looks like there's going to be an overload that is going to cause a transformer to explode or is going to cause the lines to go down so that that doesn't happen or that it doesn't expand into a greater outage. But it doesn't say, and I respectfully submit it doesn't come close to saying the lights shall never go out. It's not that kind of a proscription. Congress could enact something that says just that and could say the utility is the guarantor and if the lights go off the utility pays for any losses as a result. That would suggest we'd have a different power grid than we have today and we have rates that would make the utility an insurer. The question here is whether Arizona has an effect. If Arizona law applies, whether Arizona has an effect adopted that by this negligence per se argument. Your Honor, but as I said Arizona would never apply, even if Arizona law applied, would never apply negligence per se under these circumstances because these reliability standards are anything but specific. There are not specific proscriptions in those standards. What there are basically are standards that require the utilities to do certain things of a general nature such as cooperate. Is there an enforcement mechanism of any kind? There's an enforcement mechanism which is number one, voluntary reporting. That's what they're required to do. They're required to voluntarily report when something that they're supposed to do isn't done or doesn't happen. And then FERC and NERC, which is the Designated Enforcement Agency has the ability to investigate it and as they did in this instance sanction all of the utilities involved. In this instance there were five utilities that were fined or enter into settlements with FERC. That's the enforcement mechanism. But Congress clearly could have established a private right of action if they thought that what plaintiffs say they were doing was what they were doing and obviously they didn't. The top 004 rule 2 says each transmission operator shall operate so that instability, uncontrolled separation or cascading outages will not occur as a result of the most severe single contingency. Yes, but that's not, I would submit Your Honor, that's not the kind of specific proscription that Arizona law would permit to be transformed into a negligence per se claim. It's a generalized mandatory regulation that says we want you to cooperate to do these things so that this won't happen. But it's not the kind of proscription that Arizona law says is specific enough to allow for a negligence per se claim, even assuming, as I said, that you can get to Arizona law in the first place, which we don't think you can. Thank you, Your Honor. Thank you. We'll hear rebuttal. Thank you. Just a few points. With respect to the Busulaki matter, San Diego Gas and Electric had specifically argued that Arizona Public Service Corporation could be liable under a negligence per se theory. The District Court noted that, however, that plaintiffs had not alleged a negligence per se cause of action in that and that is part of the reason why we based our complaint on a negligence per se theory. And then as to the issue of load shedding under the mandatory reliability standards, the rule that we would propose would hold utilities liable for service interruptions caused by their violation of the mandatory reliability standards. So if they are complying with the mandatory reliability standards or the standards prescribe load shedding under certain circumstances, then they would not be held liable for complying with the mandatory reliability standards. And then with respect to the case of coal, that case is distinguishable. It was talking about a general statute that said utilities or public service corporations should furnish and maintain service. It wasn't dealing with a statute that specifically addressed preventing outages. And then finally, I would just point out that Give me that again about coal. What's the distinction about that? Well, that case was involving a general statute that said public service corporations should furnish and maintain service. The court noted that it didn't specifically address providing sufficient water to enable people to extinguish fires. Well, isn't that the same as the regulation I just read that said shall operate so that there shall be no instability? But this statute specifically addresses outages. And the mandatory reliability standards specifically address certain types of conduct that cause outages. The coal case involved a statute that was just talking about to all kinds of utilities public service corporations just saying that you have to maintain and furnish service to provide for the public. It wasn't specific as to what type of service or anything of that nature. Thank you. Thank you. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Bea